IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROGER MILLER MUSIC, INC., and MARY A. MILLER, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | NO. 3:04-1132 JUDGE HAYNES |
| SONY/ATV PUBLISHING LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiffs, Roger Miller Music, Inc. ("RMMI"), a Tennessee corporation, and Mary A. Miller, a Tennessee citizen, filed this copyright ownership and infringement action under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. against Defendant Sony/ATV Publishing, Inc. ("Sony"), a Delaware limited liability company. Plaintiffs are the wife of the late Roger Miller, a famous country music singer and songwriter, and RMMI, an assignee. Defendant Sony is the successor-in-interest to Tree Publishing Co., Inc. ("Tree"), the publishing company with whom Roger Miller had a contract from 1958 until his death in 1992. The gravamen of Plaintiffs' claims is that upon Roger Miller's death, Plaintiffs became entitled to the renewal copyrights of Miller's musical compositions from 1958-1964 ("the Songs") and that Sony's continued exploitation of these compositions constitutes copyright infringement in violation of 17 U.S.C. § 501 et seq. Plaintiffs seek monetary damages as well as declaratory relief and an accounting.

In an earlier Order, the Court granted in part, and denied in part, Plaintiffs' motion for

summary judgment (Docket Entry No. 13).[1] The Court concluded that Roger Miller validly assigned his interests in the renewal copyrights for the 1958-63 Songs to Sony as Tree's successor and that assignment vested in Sony prior to Roger Miller's death. The Court also concluded that as a matter of law, Mary Miller or RMMI are the legal owners of the renewal copyright interests for the 1964 and post-1964 Songs. Finally, the Court found that the totality of the circumstances surrounding Roger Miller's relationship with Sony/Tree, as well as Plaintiffs' continued receipt and acceptance of royalties from Sony for twelve years after Roger Miller's death for Sony's exploitation of these Songs, established that Sony was an implied non-exclusive licensee of Plaintiffs' renewal copyright interests for the 1964 and post-1964 songs. (Docket Entry Nos. 27 and 28). The Court also concluded that these circumstances precluded Plaintiffs' claims for infringement. (Docket Entry No. 27, Memorandum at p. 30).

Before the Court is the Defendant's motion to alter or amend (Docket Entry No. 29) citing a letter from Mary Miller, revoking its license for the 1964 and post-1964 Songs. (See Docket Entry No. 30, Declaration of Jay Bowen, Attachment thereto, Exhibit A). Sony contends that the Order should be modified to reflect that the Defendant is the exclusive and perpetual licensee of the Plaintiffs' copyright for the 1964 and post-1964 Songs and is the legal owner of the renewal copyrights for all of the Songs, including the 1964 Songs. See Docket Entry Nos. 29 and 31. Plaintiffs respond that Sony's position contradicts its earlier position in its motion papers and in its counsel's statements to the Court conceding that Plaintiffs are the owners of the copyright for the 1964 and post-1964 Songs. Plaintiffs also contend that the 1991 agreement

---

[1] The Defendant also filed a motion for judgment on the pleadings, but in light of the submission of factual materials, the Court addressed Plaintiffs' motion for summary judgment that raised the same issues.

2

upon which Sony relies is unenforceable. Response. (Docket Entry No. 32).

First, the Court agrees that by virtue of its prior admissions in its motion papers and in Sony's counsel's oral statements to the Court, Mary Miller is the owner of the copyright for the 1964 and post-1964 Songs. The Court concludes as a matter of law, that Sony is precluded from any contention that a 1992 amendment to the Copyright Act operates to convey copyright ownership of the 1964 and post-1964 Songs to Sony. The Sixth Circuit has ruled that such statements, including oral statements, are "binding judicial admissions." Rowe v. Marietta Corp., 172 F.3d 49, 1999 WL 16571 *4 n.2 (6th Cir. Jan. 6, 1999) citing Curb v. MCA Records, 898 F.Supp. 586, 590-91 (M.D. Tenn. 1995).).[2] The Court finds that the admissions here are a mixture of fact and law and more similar to the admission in Curb. Thus, the Court will not consider Sony's argument based upon the 1992 amendment to the Copyright Act and on that issue, Sony's motion should be denied.

As to Plaintiff's revocation of Sony's implied license, Plaintiffs argue first that Sony's 1991 contract does not grant any exclusive license for the 1964 and post-1964 Songs and second, that as a matter of law, an implied contract can be revoked at will. On the latter issue, the Court respectfully disagrees.

As noted in its earlier Memorandum, the distribution contract is governed by state law, not the Copyright Act. (Docket Entry No. 27, Memorandum, p. 19). Here, the Roger Miller Sony/Tree contracts were executed in Tennessee and the Court applies Tennessee law.

Tennessee law recognizes implied contracts. In Johnson v. Central Nat'l. Ins. Co., 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962), the Tennessee Supreme Court stated that an

---

[2] Sony cites decisions from other Circuits, but this Court is bound by Sixth Circuit rulings.

3

implied contract "must result from a meeting of the minds of the parties in mutual assent to the terms, [and] must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced".

Tennessee courts recognize two types of implied contracts: implied in fact and implied in law. In <u>River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.</u>, No. M 2001-00288-COA-R3-CV, 2002 WL 31302926 (Tenn. Ct. App. October 11, 2002), the Tennessee Court of Appeals recognized and summarized the distinction between these two types of contracts:

> Generally, contracts can be either express, implied in fact, or implied in law. Express contracts and <u>contracts implied in fact result from a meeting of the minds of the contracting parties; the parties mutually assent to the contract's terms. . . . such contracts must be sufficiently definite and must be based on consideration</u>. The primary difference between an express contract and a contract implied in fact is the manner in which the parties manifest their assent. . . . In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . <u>In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract</u>. . . .
>
> [C]ontracts implied in law <u>"are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice."</u> The Tennessee Supreme Court has recognized that contracts implied in law are also discussed in terms of unjust enrichment, quasi contract, and quantum meruit:
> Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto. <u>Paschall's, Inc. v. Dozier</u>, 219 Tenn 45, 407 S.W.2d 150, 154 (1966).

<u>Id.</u> at * 10-11. (emphasis added).

As to the duration of an implied contract, even if a contract were terminable at will, termination of an implied contract is limited by a rule of reasonableness. In <u>Higgins v. Oil,</u>

4

Chemical and Atomic Workers, 811 S.W.2d 875 (Tenn. 1991), the Tennessee Supreme Court observed in dicta that:

> [T]he modern view is that "indefiniteness in non-essential terms ought not to defeat the reasonable expectations of the parties." 1 *Corbin on Contracts* § 95 Supp. p. 223 (1963, Supp.1990). Thus, faced with a contractual deficiency as to length of performance, some courts would impose a reasonable period of duration. See, e.g., Stark v. Shaw, 155 Cal.App.2d 171, 317 P.2d 182 (1957). Others would nevertheless hold to the traditional view that in the absence of an explicit agreement as to date of termination, the contract is terminable at will by either party. See, e.g., First Flight Assoc., Inc. v. Professional Golf Co., Inc., 527 F.2d 931 (6th Cir. 1975). Still others would say that it is terminable upon reasonable notice. See, e.g., McGinnis Piano & Organ Co. v. Yamaha Int'l Corp. 480 F.2d 474 (8th Cir. 1973).

Id. at 881.

In Johnson v. Welch, No. M 2002-00790-COA-R3-CV, 2004 WL 239756 (Tenn. Ct. App. 2004), the Tennessee Court of Appeals noted that:

> In McReynolds v. Cherokee Insurance Co., 896 S.W.2d 777, 779 (Tenn.Ct.App.1994), this court acknowledged and applied *First Flight* and other authority holding that contracts for an indefinite duration are generally terminable at will by either party *with reasonable notice.*
> 
> . . . .
> 
> [T]his court has held that the duration of a contract need not be specified to make the contract enforceable.

Id. at 12 (emphasis in original).

To be sure, in Higgins, the Tennessee Supreme Court noted that "[c]ertainly, the law does not favor perpetual contracts." 811 S.W.2d at 881 (citing In re Miller, 90 N.J. 210, 218, 447 A.2d 549, 553-54 (1982) (perpetual contract performance "to be avoided unless there is a clear manifestation that the parties intended it", citing Williston § 38 (3d ed 1957); 3 *Corbin on*

5

*Contracts* § 553 (1960)). Yet, in Johnson, the Tennessee Court of Appeals stated: "In Tennessee, the duration of contracts need not always be specified in an agreement, and <u>an agreement that contains no express provision as to its duration may be construed as being perpetual</u>, indefinite, or terminable at will." Johnson, 2004 WL 239756 at *12. (emphasis added).

In the context of contracts granting a license to distribute copyright material, an implied contract can be perpetual, as the Fifth Circuit described in Carson v. Dynegy, Inc., 344 F.3d 446 (5th Cir. 2003).

> Carson argues that the district court erred in holding that the parties' conduct created an irrevocable, nonexclusive implied license. . . . Specifically, Carson asserts that even if Dynegy had a license to use 24HA, that license was revoked upon Carson's demanding the return of the 24HA worksheet after his termination. It is settled that a "nonexclusive license may be irrevocable if supported by consideration." Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 882 (5th Cir. 1997). And, "[t]his is so because a nonexclusive license supported by consideration is a contract." Id. (citations omitted).
>
> Assuming, arguendo, that a nonexclusive license was created, whether such a license was irrevocable rests solely with whether Carson received consideration.
>
>> This principle finds support both from scholars and among our sister circuits. *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.02[B][5] (2002); I.A.E., Inc. v. Shaver, 74 F.3d 768, 772 (7 th Cir. 1996); Avtec Sys., Inc. v. Harts, 968 F.Supp. 944, 947 (S.D.N.Y. 1997; Avtec Sys., Inc. v. Peiffer, 21 F.3d 568, 574 n.12 (4th Cir. 1994); Keane Dealer Services, Inc. v. Harts, 968 F.Supp. 944, 947 (S.D.N.Y. 1997); Johnson v. Jones, 885 F.Supp. 1008, 1012 n.6 (E.D. Mich. 1995).

Id. at 451, 452 n.6.

As a district court noted with citation to several decisions, "[c]ourts routinely recognize the right to enter into perpetual licenses incident to copyrighted material." P.C.

6

Films Corp. v. Turner Entertainment Co., 954 F.Supp 711, 714 (S.D.N.Y. 1997) aff'd on other grounds, 138 F.3d 453 (2d Cir. 1998) (citations omitted). This recognition is based upon the legal principle that licenses arise under state law, not copyright law. Id. at 714 n.6 (citing Nimmer on Copyright at § 10.08.).

Here, as found earlier by the Court, Plaintiff Mary Miller accepted payments from Sony in accordance with the 1991 agreement for twelve years. (Docket Entry No. 27, Memorandum at pp. 6, 29-30). Plaintiffs insist that Mary Miller did so under protest. See (Docket Entry No. 32, Plaintiffs' Response at p. 16). Plaintiff filed a motion for summary judgment (Docket Entry No.13), and contrary to Plaintiffs' counsel's assertion, at the time of the Court's ruling on that motion, Plaintiffs did not offer proof on this issue and these declarations were filed in response to Sony's motion to alter or amend. (Docket Entry No. 33, attachments thereto, Miller and Thompson declarations). Any such declarations should have been presented prior to the ruling on the Plaintiffs' motion for summary judgment. Basinger v. CSX Transp. Inc., 91 F.3d 142, No 94-3908, 1996 WL 400182 *2-3 (6th Cir. July 16, 1996) (authorities cited therein).

Plaintiffs did not present any proof that the terms of this 1991 agreement that is at the heart of the implied license are unreasonable or offensive to public policy. The record supports the Court's earlier finding that the parties' course of dealings created for Sony an implied non-exclusive license for the 1964 and post-1964 Songs. This implied license arises as an implied contract in law. Given that this course of conduct was based upon a written agreement that was perpetual, the Court concludes that Sony's implied license is perpetual, but is also a non-exclusive license.

An appropriate Order is filed herewith.

**ENTERED** this the 9th day of November, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge